The next case for argument is 21-2093, Finjan v. ESET. May I proceed? Yes, please, whenever you're ready. Thank you. Good morning. Juanita Brooks on behalf of Finjan. It's a pleasure to be back before the court and seeing everyone's faces. This is actually a very simple issue here. It's a claim construction issue. Obviously, therefore, it's de novo review. And the only question for the court is what is the appropriate construction for the term downloadable that appears in each of the asserted claims in the five patents at issue. In order to answer that question, we need look no further than the printed patent itself. The 844, for example, contains a definition of downloadable. We can find it at Appendix 178, Column 1, Line 44. A downloadable is an executable application program, which is downloaded... Ms. Brooks, Counselor Brooks? Yes, Your Honor. So I have a more of a theoretical question, but I think it bears on the issue here. When a patent incorporates another patent, the specification of another patent by reference, to what degree is the incorporating patent limited by that which it brings down by incorporation? I think this court addressed it very well in the X2Y case, and particularly, I believe, in Your Honor's concurrence. So when there is an incorporation by reference, particularly when we're talking about, for example, a continuation in part application, one is not limited. One adds, in fact, a new matter. That's the essence of what a continuation in part is. So one adds new matter. And therefore, if one is incorporating by reference a previous application, one cannot be bound and should not be bound by a more narrow definition in the patent that is being incorporated. So I think the court's already answered that question in the X2Y case and answered it in our favor. So what we had here was... In the case of information or portions of patents that count and that don't count, I mean, you limited it to they cannot be bound by a different definition. So that's one category. Are there many, many categories, or is that the one? I think it's case-specific, Your Honor, that you would need to look at. And what all the cases talk about is context is king. You have to look at the context in which that language is being used. There are some incorporations by reference where there is actually a reliance on the previous specification to support written description. We certainly don't have that here, where we have the definition clearly and unequivocally in the printed patent itself. Before we get into that, I mean, there are two different buckets here. So you're making an argument with respect to the 844 and maybe another one. But that's where there's, in your view, a specific definition of downloadable. That is not the case for a number of patents that are also being challenged here. And there, you're picking between two cited patents as reference, not the patent itself. And that's a different and a much harder argument for you, is it not? Your Honor, with all due respect, we're not actually doing that. So as to, your Honor's correct, as to the 844 and the 780 patent, there is a specific definition, which I just read to the court. Now, as to the other patents, the 086, the 755, and the 621, there is not a specific definition within that, I'll call it the printed patent. But we aren't relying on the incorporation by reference of another patent. What we are relying on is that those patents go back to the original provisional patent. And that was where the court made its first mistake. The court, in its claim construction order, found that, and it's at Appendix 2, the court said, downloadable initially appears as a defined term in the specification of the 520 patent and its continuation of the 962 patent. And actually, respectfully, that is not accurate. It actually appears originally as a defined term in the provisional, the one that started this whole thing, and that is the 639 patent. We can find that at Appendix 1862, and in the provisional, the specific definition of downloadable, excuse me. So your argument with respect to the second bucket we're talking about is, you still don't look at any of the referenced patents. You just look at the initial patent. You can look at the reference, but you definitely go back to the provisional, and that is the one, as I said, that started the whole thing. The court actually... Well, if you can, wait a minute. You said you can look at the reference patents. So if you look at the reference patents in Bucket 2, you've got both one definition of downloadable that does not include size and the other that includes small. So how do you know what to pick, and doesn't that question drive you to an indefinite conclusion in any of it? No, Your Honor, it does not. Here's how you know how to pick. One, you go back to the original definition, which this court unfortunately, the district court, unfortunately thought was the 520, but it's not. It's the provisional, and the definition there is, a downloadable is an executable application program which is automatically downloaded from a source computer and run on the destination computer. So first we look at that, and we don't see anything about the word small in there. But then we can look at the context of the three patents where we don't have the express definition. So let's look at the 086, and let's look specifically at appendix 253, column 2. There is described, starting at line 3, that a downloadable information comprising program code can include distributable components, and they describe what they are. It can also include, for example, application programs, Trojan horses, multiple compressed programs, such as zip or metafiles. One doesn't even need to be one of skill in the art to know that a zip file is not small. So... Okay, can I move you back maybe? The word is back to the more global questions about reference patents. It seems to me that your argument rests on the fact, as a given, that there is a contradiction between the definition of downloadable in those patents and in the reference patent. Why? What if we were to conclude that there is no contradiction because there is silence on size in one definition and specificity on size in the other? In other words, the others don't say large, and so you have to pick between opposites and contradictions. One is silent and one gives a size. Why is that not a different way of looking at it than when you say there's a contradiction and therefore we go with the other? And actually, Your Honor, I think ESET's argument is that there's a contradiction, and therefore you have to pick the one that has both small and interpretable. Our argument is not that. Our argument is that there is not a contradiction. In the 780 and the 844, there's this explicit definition. Now, the question is, when we were talking about the other three, where do we find the definition for that? Once again, we find it in the provision. There is no specific definition of what the size is, right? There's silence in terms of what the size is. There's not quite silence. The definition itself doesn't have the word small, therefore one must assume it is not modified by small. If it was small, the word small would appear in there. But we can also look elsewhere in the specification with all three of those other patents that don't have the specific definition. All three of them talk about downloadables having, for example, zip files. Zip files are not small. And if they say one doesn't even need to be... But do those patents also incorporate small, like applets and things of that nature? Correct. They do both. They have large or not small, and then they have some that are small, which is applets, which is why the definition is in the provisional. The 780 and the 844 is the correct definition because it doesn't limit it to small. By limiting it to small, you have read out various examples that appear throughout these patents. The only place small appears is in the one-off, the 520 patent, which came off of the same provisional but was dealing only with applets. It says so. It says in the patent, i.e., applets. So it wasn't talking about zip files, and it wasn't talking about metafiles. It was only talking about applets, and therefore it was appropriate, I guess, for the drafters, and we're not here talking about whether that's going to render the 520 invalid or not or indefinite. They chose to put the word small in there since they were only dealing with applets, whereas in all the other patents... we're dealing both with small and something else. I mean, I understand your argument that that's the case, but the patent itself doesn't say that. That may be the claim to advance in that particular new invention that you're building upon the prior inventions, but where do I see that, or where do you hang your hat in that regard? Well, we hang our hat certainly for the 780 and the 844 in the specific definition. It doesn't contain the word small. For the other three, we go back to... they're going back to the provisional, which does not contain the word small, and for when we look in context, as X2Y case explicitly talked about, context is king in this matter. We look at what does the rest of the specification say, and it talks about downloadables containing things that are not small, like, for example, zip files, and all three of those, the other... the 086, the 755, and the 621 also do that. I would also point out... let's look at the 086, for example. There is a dependent claim. If we look at Appendix 263 and Column 21, there is a dependent claim, Dependent Claim 2, that specifically talks about the computer-based method of Claim 1 where the downloadable includes an applet. So we know, for claim differentiation purposes, that the downloadable in Claim 1 has got to be bigger than the downloadable in Claim 2, and the downloadable in Claim 2 is that small applet that is the subject of the 520 patent. So there's a general principle that a claim is not construed in the manner which renders a claim invalid. Is that what's happened here? Well, that is exactly, unfortunately, what's happened here, and the sad thing is it never needed to happen. This all started where ESET convinced the district court that the district court needed to have the word interpretable explicitly in the definition when, in fact, the district court did not need to have the word interpretable in the definition because executable covers interpretables. The patent itself gives examples of what are downloadables and includes, for example, Javascripts, which are interpretables. The only difference is an interpretable gets interpreted simultaneously with being executed. There was no reason, and the irony is the district court got it at the hearing at Appendix 23606. The district court said that the district court found as far as the 086, 844, and 780 that the definition that appears in there includes examples that are interpretable, and therefore within that definition, being executable, is interpretable. There was no reason to go back and find interpretable. The reason we're here is exactly that. We had battle-tested claims that had been through multiple proceedings, both at the PTAB, the PTO, and in court, and then all of a sudden all five of them are invalid as being indefinite because of this incorporation of the word small when there was never any need to because there was never any need to bring in interpretable. You would agree that the incorporation of small within the definition at the end of the day invalidates the pen due to indefiniteness? I would agree that that's what the district court found. I believe the district court was wrong on the record to grant summary judgment of indefiniteness. You're arguing that use of the word small within the construction invalidates the patent. According to the district court, yes, Your Honor. That is what the district court found. We aren't conceding that. You're disputing that. I understood that you said even if you find that small is in the patent, small is not indefinite. Not based on the record. What the district court did on the record and this is the second part of the argument, is the district court shifted the burden to Finjen to prove that small did not render the claim indefinite. We very much dispute that it was appropriate to grant summary judgment against Finjen and find indefinite on the record that was based on a case that mistried because of COVID after one expert testified. The irony is, as I say, we never needed to get here. The definition is clear. We don't need to look for interpretable. Even if we did need to look for interpretable, we certainly don't have to have small come along. There's nothing about that. I would just like to say the second mistake that happened here, which is the use of the interval licensing case that ESET argues stands for the proposition that if you take a definition that is a lexicography definition, you can't alter it. Actually, interval licensing stands for the exact opposite of that. You can alter it if necessary for clarity purposes. With that, Your Honors, unless the court has any further questions, I'll reserve my 46 seconds for rebuttal. Thank you. Good morning, Your Honors. I'm Nick Pisano from Evershed Sutherland. With me today at council table is Scott Penner. Your Honor, I've been living with this case for seven years, and I just heard some things that I didn't hear during the entirety of the case. Let me start with just, I'm sure you have  observations. I'm going to start with a couple of observations. First of all, let me start with a question. Explain the reference to the zip and meta files in the 086 file. That's a very good question, Your Honor, because no one ever mentioned that. That's exactly what I was talking about. It's in the blue brief. It's in the blue brief. No, I understand that, Your Honor. That's the first time it's there. May I? So, the whole question about zip files is other than that... I'm sorry, are you about... Do I take it your position is that reliance on that piece of the spec was not made by Finjan in the district court? That's correct, Your Honor. As a matter of fact, that was going to be my point. When Finjan filed its opening brief, they focused on excising the word small because they said that related to aptness. When we got around to the reply brief, however, we now learn that executable, or rather interpretable, is just a species of executable. There's no testimony about that in the entire trial record, and there was no suggestion to that to the district court. That's an entirely true argument. Let me just say, I must say I don't find the heavy emphasis on the need to have interpretables to be particularly to advance the ball a lot. I think of this case in the following way. Every single one of the patents in front of us has, by the law of incorporation by reference, the 520 definition. What's right in there is outranks something that is in the provisional but not in the spec itself. The question is it's perfectly permissible for something in the later specs to have overridden language that is in there, and the only question is, is there language in these five patents that overrides the small language that by law is in there? The reason I focus on this zip business is that that's the first thing that I've heard that sounds like it might be an override. Okay. Your Honor? Is that clear what I just said? I hope so, and hopefully my answer will respond to your question. Is there any override? The answer is no. If you look at the cases where there was an override, there was a broad claim it was narrowed in the continuation. The subsequent case narrowed the scope. But you could have it going the other way, too. You could say we now have sentence number one drawn in is narrow. We now have additional material and we are now going to adopt a broader definition. The best examples of that would be, here are some examples that we're now putting in the spec that wouldn't fit the narrower definition. That's why my ears really perked up when I heard this zip thing. I think, Your Honor, in the 086 that's a reference to remote operating code, that is not actually a reference to downloadable. There's also a reference to downloadable information, which is not a downloadable. In the 082 that defined downloadable. That's the 780 and the 844. They say a downloadable is an executable. The problem is, there are then explanations or examples. There's an example that says, e.g., a downloadable, and that includes scripts. The fight during the district court was, well, is a downloadable an executable or does it include an interpretable? The district court, who's a former patent litigator with hundreds of patent trials under her belt, basically looked through all of the incorporated references. That's Appendix 13, that chart that she added. She says, the only way that I can make sense of these claims of the specification, the examples, the intrinsic of it, and the extrinsic evidence, the unrebutted extrinsic evidence by Dr. Spafford, who testified about what an interpretable is and how it's different than an executable. It is important, Your Honor. That is an important distinction. The district court said, the only way I can arrive at that is if I use the incorporated definition from the 520. There was no override. The language that says, a downloadable is an executable, is not an override. It's not an override for the same reason it was not an override next to Y attenuators. Because in that case, the For what it's worth, I do not regard the sentence that appears in the two, a downloadable is an executable, as a definition that is somehow inconsistent with the other words that are by law in the same thing. If I say, a downloadable is a small thing, and the next sentence says, a downloadable is a thing, the intersection is what governs, which is a small thing. I agree, Your Honor. That's why I'm looking at this material that has been at least highlighted in a way that I hadn't noticed before about this reference to the zip language. But again, Your Honor. I would love to hear your explanation of this again. Let me The 086 describes remote operating code. That is not a downloadable. That example, I believe I don't have that in front of me. My colleague printed it, but it was too small for my old eyes to see. But I believe the sentence says, remote operating code, and then it gives examples. And zip files is in that example. The problem was, back when these inventions were created, back in 1996 I'm sorry, just a minute. Does it matter? It says, in effect, downloadable information can include, for example, application programs, Trojan horses, multiple compressed programs, such as zip or metafiles, among others. Right, Your Honor. And as the district court pointed out, that is downloadable with a small d and is downloadable information. That is not our claim term, which is downloadable. It's not a small d, but... Okay, I apologize. Again, I don't have it in front of me. But it's the information. It's not a downloadable. There was no discussion of the remote operating code. This section that we had in the district court. The district court focused on the 780 and focused on the 844. And then she went to the other two, the 621 and the 755 patents. And in those patents, the only explanation for the claim terms in those patents comes from the 962 patent. And the 962 patent is a descendant of the 520 patent. It's identical. And so, during prosecution of those patents, let me see if I can find the citation to it. Okay. So, as you look at appendix 1061, 1062, appendix 1073 to 1076, those are the discussion in the 621 and the 755 prosecution histories where Finjen was asked, tell me where the claim support is for these claim limitations. And Finjen said, well, they're in the 962. And so, for those claims, or for those patents, the only support is provided, or the support for the disclosed inventions is in the 520 962 patent. And why would you then define downloadable any way otherwise than as is described in the 520 962 patent, which is a small executable or interpretable application program. So, for those two, that's very clear. For the 086 patent, there is no definition of downloadable. You've pointed to downloadable information. That patent does not say a downloadable is an executable application program as it says for the 780 and the 844. There's no definition in the 086, and no one focused on the language that counsel just pointed at, and you've... There's no so-called definition expressly. There's no express definition. There is one there, namely, the entirety of the 962, which is incorporated by reference. That's right, Your Honor. It's just as if it was there. That's right. Now, if I might, Your Honor, before I run out of time, the question about small, it was not the district court's position that just because it included the word small, it was automatically indefinite. That's not what happened. What happened was we filed an original motion of summary objection. The judge said, I want to hear more from the experts about what is small. And so, during expert discovery, we asked each of Finjen's six experts, well, how big is small? Because the court decided that she had two choices. She could either pick the definition from the 780, 844 patent, that a downloadable is an executable, or she could pick the definition from the 520 patent, whereas a downloadable is a small, executable or interpretable application program because there was agreement between the experts that downloadable has no ordinary meaning. So she felt, as she should, she's constrained to one of two meanings that were provided by the inventors. And during the expert discovery, we went around and asked each of Finjen's experts, well, how big is small? Keeping in mind that back in the time this invention was created, 1996, the size of the hard drive was two gigabytes. So you're not going to have a very large and everything was small back then, basically. And so, that term, which is in the patent, probably ought to be credited. And I think the process control case says, if something is time dependent, it doesn't change as the patent expands. So this references zip files later with respect to downloadable information. There's a change in provisional applications based on that patent. If at a certain point in time, small meant something because the technology only gave you so much space. Yes. And later, you're adding on to that particular invention and you're advancing. Okay. That's fine. You get to a point to where now you don't just have a 5.2 floppy drive disk. Now you have zip drive. You're right, Your Honor. I agree with you. And in fact, the district court judge said, I'm not going to say that the use of the term small inherently makes it indefinite. I want to hear some testimony. So we took the testimony of each of that small, according to them, was anywhere from a couple of kilobytes to a couple of megabytes to a couple of gigabytes. Then we got to our aborted trial. Dr. Cole testified, who was the infringement expert, I believe for the 844 patent, and we asked him, Dr. Cole, how big is small? And Dr. Cole said, well, small has nothing to do with size. Small is something that's now non-installable. And that came as a shock to me. It came as a shock to the district court. And no one had ever espoused that view before. I mean, did he say, is installable or non-installable? It's a small... So the file can be very large, and Dr. Cole testified it could be two terabytes, which is like the Library of Congress. It could be that large, but if it's not installed, then it is a small downloadable. And that information on top of... So just to back up, during its first discovery we had the range of the size of small from anywhere from a couple of megabytes to a couple of gigabytes at a time. Again, one hard drive is very small. By the time we got the trial, it could go to two terabytes. And then the ultimate definition was it had nothing to do with actual size. It was not related to size. And so, at that point, the district court judge, taking into account that Dr. Cole's testimony was done, and unless someone else came in with yet a different explanation, she had heard basically quite a range, and reasonably concluded that a person still in the art could not have concluded with any reasonable certainty, as is required, what is small. Now, just one last point, Your Honor. On the executable and interpretable, I think under Tevin, the court did do a subsidiary fact-finding based on Dr. Spafford's unrobotic testimony that interpretable and executable are different. Fingen never submitted anything other than a comment by Dr. Medvedevich saying, I disagree, but he never explained why. He never cited any extrinsic evidence. And so... I found it curious that the district court would find, on the one hand, that when all this process is going on, and there's kind of defined small, and you have expert testimony going all over the place, and really nobody can latch on with a good definition, right? Why didn't the district court at that point say, wait a minute, if all these experts don't know what small is, why did I include it in my claim construction? Well, Your Honor, again, because I think she felt as though she had to, because the downloadable had no ordinary meaning, it had no meaning, and so she had two choices. She picks the one out of 520, which applies to everything. She picked the one that invalidated the pattern. No, she didn't. If they had been consistent, for example, if they had testified that small is a couple of megabytes, and everyone had consistently testified that, well, they might have lost something on the back end on infringement, but at least they would have been able, I mean, the judge would not have found the term indefinite, because it wasn't the fact that it was intrinsically indefinite. It was the fact that no one could give her an answer when she asked, how big is small? It was entirely all over the range, and there was no way to tell, and that's what really tipped the balance for her. Can I just ask a question? I can ask Ms. Brooks the same thing. Is there such a thing as a small zip file? Certainly, Your Honor. I mean, zip files could be any size at all, and there was no discussion in the prosecution history as to what was big or what was small. That just simply isn't fair. Thank you, Your Honor.  the statement that doctors... Just a minute. Well, we certainly... Three minutes for rebuttal. Thank you, Your Honor. First, I would like to address the statement that Dr. Stafford's opinion was unrebutted. It was very much rebutted. Appendix 2 115. Dr. Medvedevich submitted a declaration specifically saying he disagreed with Dr. Stafford and said specifically why. He said a person of ordinary skill in the art would understand that Java, JavaScript, ActiveX, and Visual Basic files are executable application programs that can execute other software components. Those are the very interpretables that Dr. Stafford said were not executables. Dr. Medvedevich said otherwise. Going next to this argument about zip files is the first that counsel's hearing of it. On page 36 of our blue brief, we make this exact argument. What about in the district court? In the district court, we made the exact argument that small would override the intentions of the inventors in the five patents that issue. Did you cite this material? I don't know if we cited this exact. We cited the specification as a whole. I wasn't counsel below, so I'm not sure if this exact one was cited, but I do know that in our blue brief, it was cited at page 36. We specifically talked about multiple compressed programs, zip files, and so on. By the way, that same language also appears in the 755 Appendix 327 lines 40 and 41, and again, also appears in the 621 Appendix 290. In your brief, just to be clear, on page 36, you're just talking about the 086 patent. We are, Your Honor, but it also, that same exact language appears in the other two. The same argument would, in fact, apply. Are there such things as small zip files? I'm not aware of any. I have to admit, I'm not one of skill in the art, but certainly the multiple compressed files that are also talked about in that very same language, as we say, shows that we're not focused. Unlike the 520, these five patents are not focused on applets, which are, per se, small. I would also point out that the court originally, the district court originally thought and believed that interpretables were encompassed in executable. Dr. Spafford, at that point, was an outlier. There is no explanation, sadly, in the court's Claim Construction Order, which starts at Appendix 2, for why the court decided to bring in the 520. And in bringing in the 520, even if it was to find interpretables, which the court didn't need to do because it was already covered by executables, there's no explanation in the court's Claim Construction Order or anywhere in ESET's brief as to why small had to come along with it. Other than to argue that lexicography says you can't take part of a definition when, in fact, the case they cite stands for the exact proposition that you do, in fact, and can, in fact, take part. So the court brought in what the court then found, automatically infected all the patents and rendered them all indefinite. Thank you very much. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning.